**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TAPESTRY SENIOR HOUSING
MANAGEMENT, LLC,

         Plaintiff,

v.

UNITED STATES OF AMERICA,

         Defendant.

Case No. 25-cv-3419 (LMP/EMB)

**ORDER GRANTING**
**MOTION TO DISMISS**

---

Kathleen E. Pfutzenreuter, **Wagner Tax Law, Minneapolis, MN**; Nathaniel S. Pollock, Paul E. Harold, and Tiernan B. Kane, **SouthBank Legal, South Bend, IN**; and Peter Haukebo, **Frost & Associates, LLC, Annapolis, MD**, for Plaintiff.

LaQuita Taylor-Phillips, **U.S. Department of Justice, Tax Division, Washington, D.C.**, for Defendant.

Tapestry Senior Housing Management, LLC brought this action alleging that the United States of America has wrongfully refused to grant it an employee retention tax credit authorized by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). ECF No. 1. The United States moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 16. Because Tapestry fails to state a plausible claim for relief, the Court grants the United States' motion and dismisses the complaint.

## BACKGROUND

**I.    The CARES Act and the Employee Retention Credit**

In response to the COVID-19 pandemic, Congress passed the CARES Act.  *See generally* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).  The CARES Act "contained several emergency economic relief provisions to aid small businesses," including the Employee Retention Credit ("ERC").  *JPM Rest., LLC v. United States*, No. 1:24-cv-357, 2026 WL 561147, at *1 (E.D. Tenn. Feb. 27, 2026).  The ERC was eventually codified at 26 U.S.C. § 3134.

The ERC generally was Congress's attempt to provide specific and limited financial aid to businesses who experienced significant revenue declines or were forced to fully or partially suspend operations and to encourage businesses to avoid layoffs and furloughs because of COVID-19-related government orders.  *See generally COVID-19-Related Employee Retention Credits: Overview*, Internal Revenue Serv., https://www.irs.gov/ newsroom/covid-19-related-employee-retention-credits-overview [https://perma.cc/8SVJ-EWG6].  The ERC operates as a tax credit and allows an eligible employer to seek "as a credit against applicable employment taxes for each calendar quarter an amount equal to 70 percent of the qualified wages with respect to each employee."  26 U.S.C. § 3134(a).  An eligible employer is one who "was carrying on a trade or business during the calendar quarter for which the credit is" sought, *id.* § 3134(c)(2)(A)(i), and either: (1) "the operation of the trade or business . . . [was] fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to" COVID-19,

2

*id.* § 3134(c)(2)(A)(ii)(I); or (2) the employer's gross receipts "for such calendar quarter are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019," *id.* § 3134(c)(2)(A)(ii)(II).  To qualify as an eligible employer, then, a business must show that it was either "fully or partially suspended" by a governmental order or that it received less than 80 percent of its usual revenue.  *Id.* § 3134(c)(2)(A)(ii). And the ERC is a "presumption-out" statute, meaning that 'everyone starts outside of eligibility for the stated relief, and claimants must show why they fit within and satisfy applicable statutory definitions to get 'in' and qualify for the relief.'"  *In re JSmith Civil, LLC*, 674 B.R. 207, 213 (Bankr. E.D.N.C. 2025).

Notably, Congress did not define the key terms "partial," "suspension," or "orders from an appropriate governmental authority."  *JPM Rest*, 2026 WL 561147, at *1.  In response to this uncertainty, the IRS issued Notice 2021-20 on March 1, 2021.  *See generally* Internal Revenue Serv., Notice 2021-20, Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act (2021), https://www.irs.gov/pub/irs-drop/n-21-20.pdf  [https://perma.cc/M4UC-3BFJ] (hereinafter "Notice 2021-10"); *see also ERC Today LLC v. McInelly*, 782 F. Supp. 3d 721, 727 (D. Ariz. 2025) ("As the agency tasked with administering the credit, the [IRS] had to determine what the statute required for eligibility and disseminate that information."). Important here, the IRS explained that qualifying governmental orders are "[o]rders, proclamations, or decrees from the Federal government or any State or local government" that "limit 'commerce, travel, or group meetings' . . . and relate to the suspension of an employer's operation of its trade or business."  Notice 2021-10 at 24–25.  But:

> Statements from a governmental official, including comments made during press conferences or in interviews with the media, do not rise to the level of a governmental order for purposes of the employee retention credit. Additionally, the declaration of a state of emergency by a governmental authority is not sufficient to rise to the level of a governmental order if it does not limit commerce, travel, or group meetings in any manner.  Further, such a declaration that limits commerce, travel, or group meetings, but does so in a manner that does not relate to the suspension of an employer's operation of its trade or business does not rise to the level of a governmental order for purposes of the employer's determination of its eligibility for the employee retention credit.

*Id.* at 25.  The IRS further addressed what it considers a "partial" suspension of operations, particularly where a governmental order did not force a business to close entirely.  The IRS explained that "an employer that operates an essential business may be considered to have a partial suspension of operations if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order."  *Id.* at 27.  Moreover,

> [A] portion of an employer's business operations will be deemed to constitute more than a nominal portion of its business operations if either (i) the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts . . . , or (ii) the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019).

*Id.* at 27–28.  The IRS also clarified that a reduction in demand brought about by a governmental order does not qualify as a partial suspension, *id.* at 29; that a business that must be closed "for certain purposes" but "may remain open for other limited purposes" is considered partially suspended if "the operations that are closed are more than a nominal portion of its business operations and cannot be performed remotely in a comparable

manner," *id.* at 34; and that "[t]he mere fact that an employer must make a modification to business operations due to a governmental order does not result in a partial suspension unless the modification has more than a nominal effect on the employer's business operations," *id.* at 39.[1]

Given the widespread impact of the COVID-19 pandemic, the demand for ERCs has been significant.   The IRS has noted there are "unscrupulous actors misleading businesses about the ERC and encouraging businesses to claim the credit regardless of eligibility."   *ERC Today*, 782 F. Supp. 3d at 728; *see also IRS Accelerates Work on Employee Retention Credit Claims; Agency Currently Processing 400,000 Claims Worth About $10 Billion*, Internal Revenue Serv., https://www.irs.gov/newsroom/irs-accelerates-work-on-employee-retention-credit-claims-agency-currently-processing-400000-claims-worth-about-10-billion [https://perma.cc/E9DK-5GLV] (noting that "[a] significant number of the [ERC] claims came in during a period of aggressive marketing by promoters, leading to a large percentage of improper, ineligible claims").   To that end, in 2023, the IRS announced a moratorium on processing ERC claims while it determined how best to handle

---

[1]    Judge Armando O. Bonilla of the U.S. Court of Federal Claims does an excellent job defining qualifying government orders.  *See Northeast Health Servs., LLC v. United States*, No. 24-2096T, 2026 WL 1530240, at *7–8 (Fed. Cl. May 28, 2026).  In that case, the United States conceded that the specific COVID-19 orders at issue, Nos. 13 and 33, were issued by the Governor of the Commonwealth of Massachusetts and constitute qualifying government orders.  *Id.* at *7.  The Court instead turned to causation and whether the Northeast Health Services' suspension of operations was of its own volition or "due to" orders from an appropriate governmental authority.  *Id.* at *8–14.

claims moving forward.  *See ERC Today*, 782 F. Supp. 3d at 728–29.  That moratorium has since lifted, but thousands of applications remain pending.  *Id.* at 730–31.

## II.    Tapestry Applies for and Is Denied an ERC

Tapestry is a Minnesota company that provides "senior living, assisted living, and memory care services for elderly residents" and, as relevant here, has locations in Ohio, Pennsylvania, and Florida.  ECF No. 1 ¶¶ 6, 29.  Tapestry claims that the COVID-19 pandemic and the response to it from governmental authorities in various states affected its business operations in 2021.  *Id.* ¶ 28.

Tapestry applied for ERCs for the "first two quarters of 2021."  *Id.* ¶¶ 4–5.  Tapestry claims that it is entitled to ERCs for those quarters because "orders" from the "Governor of Pennsylvania mandating social distancing and enhanced cleaning procedures, and orders from the Ohio Department of Health that required social distancing measures and enhanced sanitization," caused it to: (1) block visitors and potential new tenants from entering its facilities for tours; (2) suspend the normal operation of some residential activities including "community dining, group activities, and social outings"; and (3) "impose certain isolation, quarantine, and COVID testing protocols."  *Id.* ¶¶ 28–30.  Tapestry further claims that "gross receipts attributable to prospective resident visits (and employee hours spent on such visits), together with suspended services for existing residents" were more than 10 percent of its total gross receipts or hours from the same quarters in 2019.  *Id.* ¶ 31.  Tapestry does not state specifically whether the IRS has denied its credit application or simply not processed the application, but either way, Tapestry alleges that the IRS has not granted the application.  *Id.* ¶ 5.

### III.   Procedural Posture

On August 29, 2025, Tapestry filed this refund lawsuit pursuant to 26 U.S.C. § 7422 seeking $3,046,106 in erroneously withheld ERC refunds.  ECF No. 1 at 1.  The United States filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that Tapestry's complaint fails to state a plausible claim for relief because it does not identify what "orders" supposedly caused Tapestry to suspend its business operations.  ECF Nos. 16, 17.  Tapestry filed a brief in opposition, ECF No. 22, and the United States filed a reply, ECF No. 24.  On January 15, 2026, both parties informed the Court that no hearing on the motion was necessary.  Accordingly, the Court took the motion under advisement without a hearing.  ECF No. 25.

### ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).  The complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although pleading standards do not require "detailed factual allegations," they require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Further, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," a

pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

A claim for erroneously withheld ERCs is, in some respects, new to the federal courts. The parties cite only one case in their opening briefs that addresses this specific claim head on.[2] ECF No. 17 at 2; ECF No. 22 at 6; *see JSmith*, 674 B.R. at 207. But the standards generally applicable to claims for tax refunds are well established. "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States District Court or in the United States Court of Federal Claims." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008); *see* 28 U.S.C. § 1346(a)(1). And the parties appear to agree that *JSmith* provided an accurate and concise statement regarding what Tapestry must show to be eligible for this specific tax refund:

> (1) it was subject to a compulsory governmental mandate limiting commerce, travel, or group meetings that was issued because of the pandemic; (2) it stopped a meaningful portion of its operations during the relevant quarter; and (3) the reason it stopped operating was that the governmental mandate directly required it.

*JSmith*, 674 B.R. at 215; *see* ECF No. 22 at 2 (quoting 26 U.S.C. § 3134(c)(2)(A)(ii)(I)) ("Eligibility for the Credit may be established by showing that Plaintiff's business

---

[2]    The Court has been able to find only a handful of cases since. *See, e.g.*, *JPM Rest., LLC*, 2026 WL 561147; *Northeast Health Servs., LLC v. United States*, 2026 WL 1530240; *Tri-State Mem'l Hosp. v. United States*, 2:25-CV-0181-TOR, 2026 WL 1497190, at *8 (E.D. Wash. May 28, 2026) (finding that Tri-State identified a specific order, Proclamation 20-24.2, and facts supporting that the order interrupted or suspended specific operations, which "is enough to survive dismissal").

operations were partially suspended 'due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19).'"); ECF No. 17 at 3 (same).  A similar framework has since been used by at least one other court.  *See JPM Rest*, 2026 WL 561147, at *5 (defining the key terms consistently with *JSmith* and considering whether the plaintiff "experienced a full or partial shutdown of operations due to a government order during the requisite time periods").

Accordingly, as both parties acknowledge, not all governmental orders qualify an employer for ERCs, even if they were related to COVID-19.  To establish a plausible claim for relief, then, it is Tapestry's burden to plead sufficient facts to show how it was affected by a qualifying governmental order.

Tapestry plainly fails to do so.  The total pleadings from Tapestry on this issue are:

1.    Plaintiff's business was partially suspended due to government orders that meet the statutory criteria in the first two quarters of 2021.  ECF No. 1 ¶ 4.

2.    Plaintiff is an eligible employer that paid qualified wages and suffered partially suspended operations such that Plaintiff was entitled to ERCs.  *Id.* ¶ 23.

3.    Plaintiff's operations were partially suspended during the first and second quarters of 2021 "due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID–19)."  *Id.* ¶ 28.

4.    Among numerous orders that caused the partial suspension were orders from the Governor of Pennsylvania mandating social distancing and enhanced cleaning procedures, and orders from the Ohio Department of Health that required social distancing measures and enhanced sanitization.  *Id.*

5.  Implementation of governmental orders applicable to Plaintiff required measures that blocked visitors, including prospective residents and families . . . and suspended the normal operation of activities for existing residents, including community dining, group activities, and social outings. *Id.* ¶ 30.

The first three allegations are nothing more than legal conclusions entitled to no presumption of truth at this stage.[3] *Twombly*, 550 U.S. at 555. And while the other two allegations are, in theory, factual allegations, they do not give rise to anything more than a "mere possibility of misconduct," which is insufficient to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

To establish eligibility for ERCs, Tapestry must show that a governmental order required it to cease operating some portion of its business. *See JPM Rest*, 2026 WL 561147, at \*5 (noting that "'due to' requires both factual and proximate causation—meaning that the order must have been the 'but-for' cause and a foreseeable cause of the full or partial shutdown"); *JSmith*, 674 B.R. at 215. Tapestry vaguely gestures toward governmental orders from Ohio and Pennsylvania. But it does not identify them with any specificity. Then Tapestry suggests that those orders caused it to block prospective tenants. But it provides no factual basis from which the Court can connect those dots. The Court has no way of knowing, for instance, whether the purported orders were legally binding orders at all (as opposed to proclamations or recommendations to which Tapestry voluntarily

---

[3]  Tapestry suggests that these allegations "reveal[] plainly" that the alleged orders were issued because of COVID-19. ECF No. 22 at 3. But that's not true. Those claims *allege* as much, but they are simply a recitation of the statute itself. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.'").

modified its conduct), when the orders were effective, and what they required. *See, e.g.*, *JPM Rest*, 2026 WL 561147, at \*6–7 (analyzing several governmental orders to determine whether they constituted *qualifying* orders as that term is used in the ERC statute).  It is Tapestry's burden to plead those necessary elements.  *See* 5B Wright & Miller's Fed. Prac. & Proc. § 1357 (4th ed., Sept. 2025 update) (noting that a "court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened").

Tapestry disagrees that it must actually name the orders that it claims caused it to suspend operations.  ECF No. 22 at 5.  If Tapestry is not going to name those orders, however, it must describe them with more specificity than it has here and explain why the governmental orders make Tapestry eligible for ERCs.  That the complaint does not provide any factual support for why unnamed orders qualify Tapestry for ERCs denies the United States the opportunity to test the sufficiency of Tapestry's claims.  It is possible, for instance, that the orders Tapestry has in mind are deficient on their face because they were merely "[s]tatement[s] from a governmental official," or "do[] not relate to the suspension of an employer's operation."  It also could be the case that Tapestry made modifications that simply were not required by the orders.  Notice 2021-10 at 24, 27, 39; *see also JPM Rest*, 2026 WL 561147, at \*6–7 (holding that some orders relied on by the plaintiff were not orders because "these documents do not use compulsory language, nor do they set out any consequences should businesses not comply").  By failing to offer any information about the purported "orders" that affected Tapestry's business, Tapestry has deprived the

11

United States of "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation modified).

After this case was fully briefed, Tapestry submitted as supplemental authority *Plastic Film, LLC v. United States*, No. 5:25-cv-30-DCB-LGI, 2026 WL 144343 (S.D. Miss. Jan. 20, 2026), ECF No. 20. That court considered a similar complaint and adopted a similar argument made by Tapestry here. *See id.* at *3 ("Although the Complaint does not identify a specific governmental order, there is no statutory, regulatory, or binding precedent requiring such specificity at the pleading stage."). *Plastic Film* noted that whether unnamed governmental orders "ultimately substantiate Plaintiff's eligibility for the credit presents a fact-intensive issue appropriately addressed through discovery or at summary judgment." *Id.* The Court noted that "given the numerous state, local, and federal orders potentially applicable to the partial suspension of operations, a claimant should not be required to identify a particular order at this stage." *Id.* But that puts the cart before the horse. Without alleging a plausible claim, a plaintiff "is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686. In other words, a plaintiff is not allowed to "plead first and discover later," lest the Court "ultimately encourage meritless suits *in terrorem*."[4] *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, MDL No. 08-1905 (RHK/JSM), 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) (citation omitted). *Plastic*

---

[4]     Tapestry also submitted as supplemental authority the United States Supreme Court's recent decision *Berk v. Choy*, 607 U.S. 187 (2026). ECF No. 26. *Berk* simply reiterated the well-established pleading standards applicable in federal court, 2026 WL 135974, at *3, and is of limited help to Tapestry here.

*Film* is ultimately not binding on this Court, and the Court does not find it persuasive in relation to this case.[5]

Moreover, it is unclear how discovery would help Tapestry understand what orders affected its business. Courts have acknowledged, as a general proposition, that a plaintiff might sometimes lack information to provide certain details in a complaint when those details lay within a defendant's exclusive control. *See Merchant & Gould, PC v. Premiere Glob. Servs., Inc.*, 749 F. Supp. 2d 923, 938 (D. Minn. 2010). But that's not the case here. Discovery would do nothing to assist Tapestry to figure out which orders support its claim and how those orders related to its business operations.[6] Clearly, by bringing this case, Tapestry must have some idea of which "orders" purportedly affected its business. By failing to name those orders or to provide any other information about those orders, Tapestry has not provided "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation modified).

Two final points. First, Tapestry dismisses as improper the United States' request that Tapestry name the orders it is referencing because the "orders issued by Ohio and Pennsylvania in response to the Covid-19 pandemic are public records" and "[o]ne could

---

[5]    Moreover, *Plastic Film, LLC v. United States* is also readily distinguishable on the facts, as the United States had already provided ERCs to Plastic Film for Quarters 2 and 4 in 2020 and Quarter 2 in 2021. 2026 WL 144343 at *1. The Rule 12(b)(6) motion only dealt with a refund claim for Quarter 3 in 2020.

[6]    This is particularly true in the ERC-claim context because it was not the United States who issued the purported orders, but state (or possibly local) governments. As a result, discovery with the United States cannot unveil any new information about what those orders stated or mandated. The United States is indeed the only party who is in the dark, at this stage, as to the actual basis for Tapestry's claim.

look them up." ECF No. 22 at 5–6. Tapestry further suggests that the orders are identified "by inference." *Id.* at 5. But "figure it out" is not an appropriate response to a motion to dismiss. *See Conner v. Marriott Hotel Servs., Inc.*, 559 F.Supp.3d 1305, 1310 (M.D. Fla. 2021) (noting that *Twombly* and *Iqbal* "rejected such we'll-figure-it-out-in-discovery arguments"). It is Tapestry's burden to plead itself into federal court. And Tapestry's assertion that the United States "figure it out" does not help the Court assess the complaint's sufficiency.

Regardless, even as a factual matter, Tapestry's suggestion that the orders on which it purportedly bases its claim are incorporated "by inference" is nonsensical. As Tapestry notes, and as was evident to anyone who lived through the COVID-19 pandemic, there were "numerous" orders from various governmental agencies and entities. ECF No. 1 ¶ 28; *see, e.g.*, *JPM Rest.*, 2026 WL 561147, at *6 (noting that the plaintiff "references federal orders, the Tennessee Pledge, Tennessee Governor's Executive Order Nos. 17, 27, 29, 73, 77, 80, 81, 82, and 88, as well as directives from the City of Chattanooga, Hamilton County and the Hamilton County Health Department, OSHA, and the CDC"). In addition to not providing the substance of any specific order, Tapestry does not even provide the date or date range of any specific order. Without such basic information, it would not be possible to conclude (beyond guesswork) which specific order Tapestry has in mind.[7] Moreover,

---

[7] Indeed, the Court wonders how the United States is supposed to provide an answer to the complaint without blindly referring to and thoroughly assessing dozens of potential orders from Pennsylvania and Ohio. Rule 8 does not shift such a heavy burden onto the defendant. *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (noting that a plaintiff may not "shift[] onto the defendant and the court

14

Tapestry suggested in a footnote in its responsive brief that it "does not rely exclusively on Ohio and Pennsylvania governmental orders." ECF No. 22 at 6 n.2. This is surprising to the Court given that the complaint only references orders from Ohio and Pennsylvania. This deficiency leads to the conclusion that Tapestry's intent is simply to keep the United States guessing and to figure out its own case at a later date. Such an approach is antithetical to Rule 8's notice requirements. *Tran v. City of Holmes Beach*, 817 F. App'x 911, 914 (11th Cir. 2020) ("Fostering guesswork is not a goal of pleading . . . ."); *Contreras v. Wischkaemper*, No. 2:08CV00162JLH, 2008 WL 4643167, at *3 (E.D. Ark. Oct. 17, 2008) (noting that "the plaintiff bears the burden of sparing the Court the guesswork"); *Razuki v. Caliber Home Loans, Inc.*, No. 17-cv-1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (explaining that it is not enough to "recite[] a few buzz words with the hope that [the defendant] may be able to figure out later what, if anything, [it] has done wrong").

Second, Tapestry argues that even if its complaint is too vague, the United States should not have moved to dismiss under Rule 12(b)(6) but should have instead filed a Rule 12(e) motion for a more definitive statement. ECF No. 22 at 6–7. The Court disagrees. Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). It is aimed at remedying

---

the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support").

15

"unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013) (citation omitted). Tapestry's complaint is not unintelligible; it is simply insufficiently detailed.[8] Regardless, even if the United States could have moved for a more definite statement under Rule 12(e), Tapestry points to no caselaw suggesting that the United States was required to do so instead of filing a Rule 12(b)(6) motion. In the same respect, Tapestry could have freely amended its complaint after the United States filed its motion to dismiss under Rule 15(a)(1), but instead chose to respond to the United States' motion and risk this Court's decision.

## CONCLUSION

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' Motion To Dismiss (ECF No. 16) is **GRANTED**; and

2. Tapestry's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 25, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

---

[8] That said, the fact that Tapestry even suggests that a Rule 12(e) motion would have been appropriate here highlights the point: the complaint fails to alert the United States and the Court as to the actual bases for Tapestry's claim to relief.